**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**


NICHOLAS FITZPATRICK,

      Plaintiff,                   CASE NO. 05-CV-10187-BC

v.                              DISTRICT JUDGE DAVID M. LAWSON
                              MAGISTRATE JUDGE CHARLES BINDER

REBECCA BAILEY,
O'BELL T. WINN, and
BARB MEAGHER,

      Defendants.
_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANT'S RULE 12(b)(6) MOTION FOR DISMISSAL AND**
**RULE 56(b) MOTION FOR SUMMARY JUDGMENT**
(Dkt. 14)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion, which

is being treated as a motion for summary judgment, be **GRANTED**.


## II.    REPORT

### A.    Introduction and Facts

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned

Magistrate Judge for general case management on August 11, 2005.  (Dkt. 3.)  Pending is the

above-entitled motion.  Although Plaintiff's request for additional time for the filing of a response

was granted (Dkts. 16 & 17), no response has been filed.  Therefore, I conclude that pursuant to

E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral

argument.

Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC)[1] and is currently incarcerated at the Standish Maximum Correctional Facility.  Plaintiff filed a Complaint on July 26, 2005, and prior to any response by Defendants, was granted leave to file a First Amended Complaint, which he did on September 7, 2005.  (Dkts. 7 & 8.)  The Defendants in this case include a case manager, an assistant deputy warden and deputy warden.

According to Plaintiff's First Amended Complaint, on March 31, 2005, Plaintiff met with the Defendants who were acting together in their capacity as the Security Classification Committee (SCC).  Plaintiff was in administrative segregation (Ad-Seg) at that time.  He met with the committee in order to determine whether he was eligible for release to the "General Population" (GP) or to "Protective Custody" (PC).  According to Plaintiff's complaint, he told the committee that he would be willing to return to PC if he could not go to GP or be transferred to another facility. Plaintiff maintained before the committee that he did not commit the alleged misconduct which brought about his placement in Ad Seg.

Plaintiff alleges that he was "cruelly asked" a series of questions regarding his sexual orientation.  (Pl.'s Am. Compl., Dkt. 8 at 4.)  Plaintiff alleges that he denied that he was homosexual.  Plaintiff then alleges that one of the Defendants told him that "[h]omosexuals cause trouble in PC and GP, I see you wrote a grievance on your last SCC interview.  For that you'll stay in Ad. Seg.  You don't write grievances here and not expect consequences."  (*Id*. ¶ 2 at 4a.) According to Plaintiff, committee members told him that he had been corresponding with another prisoner.  Plaintiff alleges that Defendant Meagher told him that "I won't let you out to GP or PC

---

[1]Information available on the Internet indicates that Plaintiff is serving a 1 year, 6 month to 15 year sentence for second degree criminal sexual conduct.

cause [sic] I believe your [sic] a homosexual and homosexuals cause problems I believe you'll be right back up in here." (*Id.* ¶ 4.)

Plaintiff denies that he displayed "an attitude" and alleges that Defendants' actions were in retaliation for Plaintiff's filing of a grievance relating to Plaintiff's previous SCC interview and out of "anti-homosexual animus." Plaintiff alleges that the "classification decision was not rationally related to any legitimate penological interest, and subjected Plaintiff to an "arbitrary and irrational classification[.]" (Am. Compl. ¶ 7 at 4b.) Attached to Plaintiff's complaint are Grievances SMF 05-04-0682-28a and SMF 05-03-0616-22b, both of which were denied at all three steps of the MDOC grievance procedure. Plaintiff seeks a declaratory judgment finding Defendants in violation of his constitutionally protected rights, an injunction directing Plaintiff's immediate release from administrative segregation, as well as compensatory and punitive damages.

Exhibits attached to Defendants' motion shed considerable light upon Plaintiff's allegations. On December 8, 2004, a resident unit manager, not a party to this case, filed a "Notice of Intent to Classify to Segregation." (Defs.' Mot., Dkt. 14, Ex. C.) The behavior supporting this notice was described as follows:

> On 12-07-04 prisoner Fitzpatrick #272775 (6-116) claimed he had been sexually assaulted by prisoner Giles #175388 (6-239) on 11-30-04. Fitzpatrick claims Giles stepped into his cell on 11-30-04 and grabbed his pajama bottoms and forced his finger into his rectum. Fitzpatrick states this was non-consensual. After Fitzpatrick informed staff of the alleged assault on 12-07-04, he was offered Health Care and refused. Fitzpatrick states the prisoner in 6-108 Archer #311647 saw Giles assault him. After interviewing prisoner Archer, Archer states prisoner Fitzpatrick paid him two cigerettes [sic] to write a false statement on prisoner Giles (Letter attached), Archer states he never saw Giles assault Fitzpatrick. These false accusations made by prisoner Fitzpatrick could have resulted in prisoner Giles being placed into Administrative Segregation. Due to the seriousness of Fitzpatrick's actions it is felt that Administrative Segregation is the least restrictive envirnment [sic] he can be safely managed in at this time.

(Attach. to Winn Aff., Dkt. 14, Ex. C.)

The document indicates that a hearing investigator and relevant documents had been requested. One week later, a hearing was held. The hearing officer's findings were as follows:

> Upheld. Hearing officer believes prisoner fabricated his claim Giles sexually assaulted him. The video does show Giles going to the Fitzpatrick's room, but after viewing it twice, it clearly shows he did not go in, did not touch Fitzpatrick in a sexual manner claimed by prisoner. It does show him getting a book. Therefore, Archer reporting he lied for prisoner on this for a payment is believable as Archer could not have seen what did not occur. Also, the correspondence between Archer and Fitzpatrick shows Archer was getting payments from prisoner for his helping him, and it is far from clear Archer knew he saw a sexual assault. While there is a documented history of Giles using prisoner when they were at IBC, it appears prisoner fabricated this current claim of assault.

(*Id.*)

Attached to the instant motion is the affidavit of Defendant Barb Meagher. (Meagher Aff., Dkt. 14, Ex. A.) Ms. Meagher states that she was the chairperson of the SCC. She avers that she followed MDOC Policy Directives and denies using inappropriate language during the meeting. Defendant Meagher states that it is her recollection that "Plaintiff was not entirely truthful in some of his responses and that may have swayed the SCC to not release him at that time." (*Id.* ¶ 3.)

Also attached to Defendants' motion is an affidavit of Rebecca Bailey, a case manager at the Standish Maximum Correctional Facility. (Bailey Aff., Dkt. 14, Ex. B.) Ms. Bailey states that Fitzpatrick was not placed in administrative segregation as the result of a misconduct, rather, he was classified to administrative segregation through a Notice of Intent in which he made false accusations against another prisoner about being sexually assaulted. Ms. Bailey denies the statements attributed to her by Plaintiff in his complaint. She states that as a case manager, she lacked the authority to make a decision regarding Plaintiff's placement and attended the SCC meeting "to answer questions for the committee in regards to the prisoner's file and his behavior while housed in my particular unit." (*Id.* at 2.) She also notes that since April 2005, she has been

4

transferred to another facility and no longer has any part in Plaintiff's administrative segregation status.

Also attached to the motion is an affidavit of Defendant Winn who is Assistant Deputy Warden of Operations at the Standish Maximum Correctional Facility. Defendant Winn states:

> . . . The prisoner was not placed in Administrative Segregation because of a misconduct as he alleges, but due to a Notice of Intent (NOI) generated when he accused another prisoner of sexually assaulting him. The allegations made by prisoner Fitzpatrick were very serious and necessitated intervention on the part of SMF staff in an effort to protect this prisoner from harm or danger. It was later established during a hearing that the allegations were false and due to the seriousness of prisoner Fitzpatrick's actions, it was felt that administrative segregation was the least restrictive environment he could be safely managed in at the time.

(Winn Aff., Dkt. 14, Ex. C., ¶ 3.)

Defendant Winn also denied the statements attributed to him and to the committee by the Plaintiff. Defendant Winn stated that, in his opinion, Plaintiff was "at times evasive in answering or uncooperative with the Committee members' efforts to make a determination whether he could be released." (*Id*. ¶ 5.) Defendant Winn stated that the procedure accorded Plaintiff complied with MDOC Policy Directives.

### B.    Analysis and Conclusions

### 1.    Governing Law and Motion Standards

### a.    Plaintiff's *Pro Se* Status

I note at the threshold that Plaintiff brings this action *pro se*. A *pro se* litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). However, it "is not the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In other words, the court is not

5

to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted). ". . . [A] *pro se* litigant, whether a plaintiff or defendant, is required to follow the law." *Williams v. Sears, Roebuck and Co.*, 143 F. Supp. 2d 941, 947 (W.D. Tenn. 2001). As the U.S. Supreme Court stated in *McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993), "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id.* at 113.

Moreover, generally pro se prisoners cannot adequately represent others, or a class. *Fymbo v. State Farm Fire and Cas. Co.*, 213 F. 3d 1320, 1321 (10th Cir. 2000); *Ziegler v. Michigan*, 59 Fed. Appx. 622 (6th Cir. 2003). Therefore, to the extent that Plaintiff may seek to make claims on behalf of other prisoners, (see First Amended Complaint, ¶¶ 11-16), the Court cannot entertain them, and will instead consider only those claims made by Plaintiff on his own behalf.

**b.     Civil Rights Claim**

Section 1983 creates a federal cause of action against state and local officials who, while acting under the color of state law, deprive an individual of a right secured to him by the Constitution or federal law. 42 U.S.C. § 1983.[2] A claim under § 1983 consists of two essential elements: (1) the defendant was a person acting under the color of state law; and (2) the defendant

---

[2]The statute provides in pertinent part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

6

deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States of America. *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996).

### c.     Defendant's Motion for Dismissal and for Summary Judgment

Defendants' motion is filed alternatively under Rules 12 and 56.  Rule 12(b) of the Federal Rules of Civil Procedure provides that when "matters outside the pleading are presented to *and not excluded by the court*, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b) (emphasis added). In their treatise, Wright and Miller explain that, pursuant to the portion of the rule italicized above,

> [t]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.  This discretion generally will be exercised on the basis of a determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (footnote omitted).

Defendants have filed exhibits, which I conclude are worthy of review and consideration. It is clear that Defendants rely upon these documents, thus presuming that the Court will accept and review them.  After reviewing the exhibits, I cannot discern that any party will be prejudiced. I therefore conclude that matters outside the pleadings should be accepted and the motion considered under Rule 56, as the acceptance and review of these documents will materially facilitate the disposition of the instant motion.

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter

of law." FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof.  *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist.  *Street*, 886 F.2d at 1479-80.  Instead, the court will rely upon the "facts presented and designated by the moving party."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).  The Sixth Circuit explicitly instructs that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion."  *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

As a general rule, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policy and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). "As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 96 S. Ct. 2543, 49 L. Ed. 29 466 (1976).

### 2.     Fourteenth Amendment Due Process Claim

Plaintiff claims that Defendants violated his Fourteenth Amendment due process rights.  To state a due process claim, a plaintiff must establish that he was deprived of a recognized liberty or property interest entitled to protection by the Due Process Clause.  *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) ("[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards.") *See also Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

"The 'root requirement' of due process is 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" *Purisch v. Tennessee*

9

*Technological Univ.,* 76 F.3d 1414, 1423 (6th Cir. 1996) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971)).   The Supreme Court has established that procedural due process claims are to be analyzed in a two-step process:   first, the court must ask whether there exists a liberty or property interest which the state has interfered with; second, the court must examine whether the procedures afforded in connection with that deprivation were constitutionally sufficient. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459-60, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989);  *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 259 (6th Cir. 1998).

In this case, I suggest that the due process claim fails at the first step.   The United States Supreme Court has made clear that a prisoner has no constitutional right to placement in any particular prison,  *see Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983), or to a particular security classification, *see Montanye*, 427 U.S. at 242.   Moreover, as pointed out above, jailers enjoy wide discretion under the U.S. Constitution to administer their facilities in the way they deem most appropriate. Accordingly, I suggest that summary judgment on Plaintiff's procedural due process claim is appropriate.

### 3.    Retaliation Claim

In  *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc), the Sixth Circuit confirmed that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* at 386.   The court clarified that there are three elements to a claim of retaliation based on the exercise of a specific constitutional right:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one

and two – that is, the adverse action was motivated at least in part by the plaintiff's
protected conduct.

*Id.* at 394.

The first element requires that the plaintiff show that he engaged in conduct protected by

law.  The court explained that when a retaliation claim is brought by a prisoner, this element must

take into consideration the plaintiff's incarcerated status:

> [I]t is generally much harder for a prisoner to show that his conduct is protected
> because prison regulations are allowed to infringe on prisoners' rights as long as
> they are rationally related to a legitimate penological concern.  *See Turner v. Safley*,
> 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).  Therefore, if a prisoner
> violates a legitimate prison regulation, he is not engaged in "protected conduct," and
> cannot proceed beyond step one.

*Id.* at 395.

The term "adverse action" in the second element is derived from retaliation cases arising

in the public employment context.  In those cases, adverse action could include discharge, refusal

to hire, or failure to promote.  *Id.* at 396.  In the prison context, the court explained,

> an action comparable to transfer to administrative segregation would certainly be
> adverse.  In order to determine whether actions of lesser severity merit being deemed
> "adverse" for purposes of a retaliation claim, we adopt the standard suggested by
> Judge Posner in *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982), that an adverse
> action is one that would "deter a person of ordinary firmness" from the exercise of
> the right at stake.

*Id.* at 396.

The third element –  a causal connection between the protected conduct and the adverse

action – begins with the plaintiff bearing the "burden of establishing that his protected conduct was

a motivating factor behind any harm."  *Id.* at 399.  One way a plaintiff may meet this requirement

is by pointing to circumstantial evidence such as "the timing of events or the disparate treatment

of similarly situated individuals."  *Id.*  The Supreme Court has held that when a plaintiff brings a

constitutional claim against a government official where proof of motive is an element, the trial court may not impose a heightened proof requirement which demands that a plaintiff must prove motive by clear and convincing evidence at the summary judgment stage. *Crawford-El v. Britton*, 523 U.S. 574, 118 S. Ct. 1584, 1595, 140 L. Ed. 2d 759 (1998).

After review of this record, I suggest that Plaintiff fails to meet the requirements set forth above. Although prisoners have a constitutional right to submit grievances, *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996), the conclusory allegations in Plaintiff's complaint that he was threatened with retaliation for filing grievances have been refuted by the affidavits and exhibits attached to Defendants' motion. The affidavits and exhibits make clear that Plaintiff was not placed in administrative segregation because he filed a grievance, but rather because he fabricated a claim that he was sexually assaulted by another prisoner. These allegations were substantiated after a hearing and independent review by a hearing officer. Plaintiff has entirely failed to meet his burden under Rule 56 of presenting "significant probative evidence" showing that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris*, *supra*. I suggest that Defendants' determination that serious conduct of this nature justifies administrative segregation was entirely within their discretion and not the result of discriminatory animus. I therefore suggest that the grant of summary judgment on Plaintiff's claim of retaliation is appropriate.

### 4.    Qualified Immunity Claim

Defendants have raised the defense of qualified immunity, which provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.

Ct. 2727, 73 L. Ed. 2d 396 (1982).  The Sixth Circuit has discussed the "sometimes confusing

doctrine" of qualified immunity:

> The confusion in this area is generated in part by carrying over an absolute
> immunity construct into a qualified immunity analysis.  When an official is cloaked
> with absolute immunity, it matters not what he did, when he did it or what the state
> of the law was then and now.  Such is not the case with qualified immunity.

*Kain v. Nesbitt*, 156 F.3d 669, 672 n.5 (6th Cir. 1998).  The court then explained:

> When making a qualified immunity analysis, it is important to remember that
> the defendant is, in essence, saying: "If the plaintiff's version is credited, what I did,
> judged today, arguendo would be wrongful, but at the time I acted, no reasonable
> officer would have known he was acting wrongfully."  *See Berryman v. Rieger,* 150
> F.3d 561, 562 (6th Cir. 1998) ("the defendant must be prepared to overlook any
> factual dispute and to concede an interpretation of the facts in the light most
> favorable to the plaintiff's case").  If an officer committed no wrong, then qualified
> immunity is not implicated.

*Id*. at 671-72.

There are two steps that a district court must take when qualified immunity is raised in a

pre-trial motion.  First, the court must determine, as a purely legal matter, if the "allegations state

a claim of violation of clearly established law[.]"  *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.

Ct. 2806, 86 L. Ed. 2d 411 (1985); *see also Siegert v. Gilley*, 500 U.S. 226, 231, 111 S. Ct. 1789,

114 L. Ed. 2d 277 (1991).  Second, the court must decide if "the public official acted 'objectively

unreasonable in light of [the] established constitutional right[].'"  *Bloch v. Ribar*, 156 F.3d 673,

678 (6th Cir. 1998) (quoting *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994)).  This

determination is necessary because it answers the "legal question of whether the defendant should

have known that his alleged acts violated clearly established rights at the time." *Dominque v. Telb*,

831 F.2d 673, 677 (6th Cir. 1987).

To find a clearly established constitutional right, a district court in the Sixth Circuit must

find binding precedent "from the Supreme Court, the Sixth Circuit, or from itself."  *Cagle v.*

*Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992). A district court may look finally to the decisions of other circuits. *See Buckner v. Kilgore*, 36 F.3d 536 (6th Cir. 1994). A violation of a state statute or state administrative provision alone does not serve to destroy an official's qualified immunity and subject him to liability for damages. *See Davis v. Scherer*, 468 U.S. 183, 194, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

The Supreme Court has explained that the constitutional right an official has allegedly violated must have been clearly established in a particularized sense. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). This ensures that government officials can reasonably "anticipate when their conduct may give rise to liability for damages." *Id.* at 639 (citing *Davis,* 468 U.S. at 195).

I suggest that Plaintiff has failed to establish either of the elements required to overcome the defense of qualified immunity. First, as pointed out previously, prisoners enjoy no constitutional right to incarceration in any particular institution or at any particular security level. As to the second element, the veracity of the allegations in Plaintiff's complaint are, I suggest, fatally undercut by the exhibits attached to Defendants' motion. As noted above, I suggest that it was not an inappropriate exercise of discretion for the Defendants to place Plaintiff in administrative segregation. I further suggest that none of the Defendants would have understood this action as being in violation of any clearly established constitutional right. In addition, as pointed out above, Plaintiff has entirely failed to bring forward any "significant evidence" to the contrary. I therefore suggest that summary judgment is appropriate as to Plaintiff's qualified immunity claim.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


　s/ *Charles E. Binder*　

CHARLES E. BINDER
Dated: February 10, 2006          United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Diane M. Smith, and served in the traditional manner on Nicholas Fitzpatrick and Honorable David M. Lawson.


Dated:  February 10, 2006          By_____s/Mary E. Dobbick_____
                                   Secretary to Magistrate Judge Binder